Filed 6/7/23  Browne v. Hudson Insurance Co. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

DOUG BROWNE,

    Plaintiff, Cross-defendant and Respondent

HUDSON INSURANCE COMPANY et al.,

    Cross-defendants and Respondents;

v.

GREENGRO TECHNOLOGIES, INC.,

    Defendant, Cross-complainant and Appellant.

E078177

(Super.Ct.No. PSC1905983)

OPINION

APPEAL from the Superior Court of Riverside County.  David M. Chapman, Judge.  Reversed and remanded with directions.

Stratege Law and J. Scott Scheper for Defendant, Cross-complainant and Appellant.

Gulino Law Office and John J. Gulino for Plaintiff, Cross-defendants and Respondents.

1

The trial court gave defendant and appellant GreenGro Technologies, Inc. (GreenGro) a 30-day deadline for finding new counsel after its previous counsel was relieved from the representation.  GreenGro failed to meet the deadline.  It also did not submit, as instructed, a declaration showing why it believed sanctions—specifically, the striking of its pleadings—should not be imposed for that failure.  The trial court therefore struck GreenGro's answer and cross-complaint, leading to entry of default on the day of the deadline.  GreenGro, however, found new counsel and filed a motion for relief from default under Code of Civil Procedure, section 473 about two months after the missed deadline.  GreenGro argues that the denial of that motion was an abuse of discretion.[1]  We agree.

                                    FACTS

James Haas is GreenGro's founder and chief operating officer.  Until "recently," he was also the company's chief executive officer and president.  He describes GreenGro as "a small, close-knit operation, with really no employees and assisted only by a handful of independent contractors, for most of its existence."

Plaintiff and respondent Doug Browne dba Environmental Engineering Enterprises (Browne) sued GreenGro, alleging he had performed "certain construction services" but had not been paid.  GreenGro answered and filed a cross-complaint against Browne and his insurers.

---

[1]  Undesignated statutory references are to the Code of Civil Procedure.

2

In October 2020, GreenGro's counsel filed a motion to be relieved from the representation, following a dispute that arose in "late summer" 2020. GreenGro did not oppose the motion, which the trial court granted on November 24, 2020. Both the motion and the court's order granting it included notice to GreenGro that a corporation "may not in most cases represent [itself]," and that "[f]ailure to retain an attorney may lead to an order striking the pleadings or to the entry of a default judgment."

The court ordered that GreenGro obtain legal representation by December 24, 2020, and set an order to show cause (OSC) hearing for that date. A second OSC hearing was set for the same date and time when GreenGro failed to appear for a case management conference on December 15, 2020.[2] The notices sent by the court for the two OSC hearings specified that the court was considering "sanctions," which could include the "striking of all or any part of any pleadings, entry of judgment, and/or any other penalties authorized by law." The court's description of the subject of the first OSC left no doubt what sanction the court was considering: "You are hereby ordered to personally appear for Order to Show Cause re: Legal Representation or Pleadings be Stricken as to [GreenGro] . . . ."

The notices for both OSCs also stated: "If you oppose sanctions, you should appear on the date specified. You must also file a declaration four court days in advance of the hearing, describing the evidence that supports any facts, which show that the court

---

[2] Counsel for Browne and his insurers, too, failed to appear at the case management conference and was also ordered to show cause why sanctions should not be imposed for that failure.

3

lacks good cause to impose sanctions . . . . Failure to do so may justify the imposition of sanctions."

GreenGro did not obtain legal representation by December 24, 2020, and did not submit any declaration before then. Haas, however, attended the OSC hearing by telephone, without counsel. The trial court had Haas state his full name for the record and asked: "Are you an attorney, sir, licensed to practice in the state of California?" Haas responded: "I am not." The court then stated: "Thank you very much. I appreciate that information. [¶] The matter is here on an order to show cause regarding legal representation or why the pleadings of [GreenGro] should not be stricken. There is no appearance this morning by counsel on behalf of [GreenGro]. [Its] pleadings are stricken . . . Plaintiff is entitled to proceed with a default." The court clarified that both the answer and cross-complaint were stricken. It then moved to other issues in the case, without further addressing Haas.[3] At Browne's request on the applicable mandatory form, GreenGro's default was entered later that day.

About two months later, on February 23, 2021, represented by newly retained counsel, GreenGro requested relief from entry of default under section 473, subdivision (b). In a supporting declaration, Haas laid out the chronology of his search for a new attorney for GreenGro. He stated that he "commenced the process of looking for

---

[3] The court vacated the OSCs regarding failure to appear at the December 15, 2020 case management conference without soliciting comment from Haas and accepting Browne's counsel's explanation for his failure to appear. It also set a deadline for Browne to request entry of GreenGro's default.

4

replacement counsel" before November 24, 2020, while his previous counsel's motion to be relieved from the representation was pending. The attorneys he consulted, however, "wanted to see the outcome of the motion before committing." During his "early talks with some attorneys," Haas "was led to believe [GreenGro] would likely have 60-90 days to find replacement counsel" after the trial court ruled on the motion. During October and November 2020, Haas also was engaged in an "extensive and consuming" process of trying to hire "two individuals to come onboard in leadership positions with [GreenGro]." Although they were hired by November 10, the two new employees lacked the "historical and institutional knowledge to meaningfully participate in seeking replacement counsel for [GreenGro], so that effort remained [Haas's] responsibility along with the other incidents of [his] management and decision-making roles for the company."

After the "surprise" of being given only 30 days to find replacement counsel, Haas "increased efforts" to do so, but "encountered hurdles." These included "decreased availability during the holiday season . . . or due to COVID, lack of interest for whatever reason, concerns over the previous firm's withdrawal, or retainer requirements that had to be vetted and met." According to Haas, the company "had been negotiating for an infusion of investor cash and needed approval of engagement terms for new counsel to secure that infusion."

By mid-December, Haas had identified two firms as possible new counsel. Neither firm, however, agreed to appear for GreenGro at the December 24 OSC hearing. One firm "ultimately declined the representation," while the other "required a retainer

5

which [GreenGro was] in the process of vetting with [its] investor and securing Board approval" as of the hearing date. According to Haas, "both firms suggested that [he] could telephone the Court at the time of the hearing, request . . . more time to secure an appearance by replacement counsel, and expect more time would be granted." As stated above, the reality did not match that expectation.

Haas "received investor approval to hire and fund" new counsel's retainer the next business day after the December 24 hearing. He was unable to reach the firm, however, until the second week of January, when he "called and learned the principal attorney whom we expected to help us had fallen ill with COVID . . . and was unavailable." After again not hearing from the firm by the end of the third week in January, GreenGro "began looking yet again for new counsel." GreenGro found and had preliminary discussions with its current counsel at the end of January 2021. It received investor and board approval to hire the firm in "early February and in mid-February completed the engagement." As stated above, by February 23, 2021, the new counsel had filed a motion for relief from the default that had been entered two months earlier and three months after the former corporate counsel was relieved. At the time of filing the motion, as it later turned out, no judgment would be entered for eight more months.

After a hearing, the trial court denied GreenGro's motion for relief from entry of default. The court's order stated that the "several excuses" offered by GreenGro were "so general that it is not possible to actually link them" to the "failure to hire counsel from October 2020, when [Haas] admits his relationship with his former lawyer broke

6

down, until . . . late February 2021." The court also noted that GreenGro "did nothing to ask the court for more time or alert the court that it was having trouble finding counsel."

In October 2021, after a default prove-up hearing, the court entered a monetary judgment against GreenGro.

DISCUSSION

GreenGro contends the trial court abused its discretion in denying its motion for relief from entry of default, asking that we reverse the judgment with directions that its "answer and cross-complaint be reinstated." We agree that the trial court abused its discretion and that GreenGro should have been granted relief from default.

GreenGro seeks discretionary relief under section 473, subdivision (b).[4] As to discretionary relief, that subdivision provides: "The court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect." An application for relief under section 473 "shall be made within a reasonable time, in no case exceeding six months" (§ 473, subd. (b).)

We apply the deferential abuse of discretion standard in reviewing a trial court's order on a defendant's motion for relief under the discretionary provision of section 473,

---

[4] GreenGro does not invoke the so-called "mandatory" provision of section 473, subdivision (b), under which a court *must* vacate a default or default judgment provided that, among other things, the motion "is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect." (See *Jackson v. Kaiser Foundation Hospitals, Inc.* (2019) 32 Cal.App.5th 166, 173 [distinguishing discretionary from mandatory relief under section 473, subdivision (b)].)

subdivision (b).  (*Zamora v. Clayborn Contracting Group, Inc.* (2002) 28 Cal.4th 249, 257–258.)  "'Although precise definition is difficult, it is generally accepted that the appropriate test of abuse of discretion is whether or not the trial court exceeded the bounds of reason, all of the circumstances before it being considered.'"  (*State Farm Fire & Casualty Co. v. Pietak* (2001) 90 Cal.App.4th 600, 610.)  When "two or more inferences can reasonably be deduced from the facts, a reviewing court lacks power to substitute its deductions for those of the trial court."  (*Ibid.*)

"However, the standard of abuse of discretion is ameliorated somewhat by the general policy promoting a hearing on the merits."  (*Carrasco v. Craft* (1985) 164 Cal.App.3d 796, 803.)  "Further, the broad remedial provisions of . . . section 473 'should be *liberally applied* and the power freely exercised to carry out the policy in favor of trial on the merits.'"  (*Ibid.*)  Where the party in default "moves promptly to seek relief, and the party opposing the motion will not suffer prejudice if relief is granted," even "'very slight evidence'" is sufficient "'to justify a court in setting aside the default.'"  (*Elston v. City of Turlock* (1985) 38 Cal.3d 227, 233 (*Elston*), superseded by statute on other grounds as stated in *Wilcox v. Birtwhistle* (1999) 21 Cal.4th 973, 979.)  "Because the law favors disposing of cases on their merits, 'any doubts in applying section 473 must be resolved in favor of the party seeking relief from default.'"  (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 980.)  "[A] trial court order denying relief is scrutinized more carefully than an order permitting trial on the merits."  (*Elston*, *supra*, at pp. 233-234.)

Ordinary prudence is required for a showing of excusable neglect.  (*Hearn v. Howard* (2009) 177 Cal.App.4th 1193, 1206 (*Hearn*).)  "'It is the duty of every party desiring to resist an action or to participate in a judicial proceeding to take timely and adequate steps to retain counsel or to act in his own person to avoid an undesirable judgment.'"  (*Ibid.*, quoting *Elms v. Elms* (1946) 72 Cal.App.2d 508, 513.)  It is well established, however, that "a corporation may not represent itself, except in a small claims proceeding."  (*Gamet v. Blanchard* (2001) 91 Cal.App.4th 1276, 1284, fn. 5; see *Merco Constr. Engineers, Inc. v. Municipal Court* (1978) 21 Cal.3d 724, 729-731.)  When a corporation's attorney of record is allowed to withdraw, the corporation must "obtain new counsel or risk forfeiting important rights through nonrepresentation."  (See *Gamet*, *supra*, 91 Cal.App.4th at p. 1284, fn. 5.)  Unless the corporation "'exercised such reasonable diligence as a [corporation] usually bestows upon important business'" in "'arranging for [its] defense,'" its motion for relief under section 473 "'will be denied.'"  (*Hearn*, *supra*, at p. 1206.)

Through Haas's declaration, GreenGro demonstrated facts that showed the neglect in failing to find new corporate counsel was excusable, particularly where it hired new counsel in less than three months.  This is not a case where, even though its former counsel was relieved, the corporation did nothing to arrange for its defense.  (Cf. *Daher v. American Pipe & Constr. Co.* (1968) 257 Cal.App.2d 816, 820 [defendants "merely laid the papers aside and did nothing"].)  And the record does not support the trial court's

comment that GreenGro had offered only "general" excuses, insufficient to reasonably account for its delay in obtaining counsel.

Specifically, Haas stated that he "commenced the process of looking for replacement counsel" before November 24, 2020, while his former counsel's motion to be relieved from the representation was pending. When former counsel's motion was granted and Haas learned GreenGro would have only thirty days to obtain new counsel, he "increased efforts" to do so. He "encountered" certain "hurdles," but managed to identify a firm that was willing to take on the representation once GreenGro was able to pay its retainer. GreenGro was able to secure the necessary investor approvals to pay the retainer on December 28, 2020, the next business day after the December 24, 2020 hearing.

Ideally, perhaps, GreenGro would have focused more intently on obtaining new counsel even before November 24, 2020, including by lining up or reserving funds for new counsel's retainer. Nevertheless, GreenGro exercised ordinary prudence by doing everything in its control to line up a new attorney by one business day after the deadline set by the court. That is at least some evidence of a good faith attempt to meet the deadline. And perfect diligence is not required to justify a finding of excusable neglect; "'reasonable diligence'" suffices. (*Hearn*, *supra*, 177 Cal.App.4th at p. 1206; see also *Buckert v. Briggs* (1971) 15 Cal.App.3d 296, 302 [inability to immediately pay retainer may be excusable reason for delay in engaging successor counsel].)

10

As it turned out, GreenGro was not able to complete a retainer agreement with the firm it had identified before the OSC hearing on the 30-day deadline, despite securing funding the day after the hearing. The prospective attorney's sudden illness, however, is a paradigmatic example of an unforeseeable event outside of GreenGro's control. It does not undermine GreenGro's showing of reasonable diligence in attempting to meet the deadline set by the trial court. Moreover, with reasonable promptness, GreenGro acted to find other counsel, filing its motion for relief from the default through new counsel within two months after default was entered, and before default judgment. (See *Mechling v. Asbestos Defendants* (2018) 29 Cal.App.5th 1241, 1244 [insurer diligently moved to set aside default judgment entered against a suspended corporation where the insurer retained counsel who, five months later, filed a motion to set aside default judgment]; cf. *Stafford v. Mach* (1998) 64 Cal.App.4th 1174, 1184 [courts generally do not set aside defaults "where there were unexplained delays" of more than three months after defaulting party knew of default].)

The trial court also faulted GreenGro for failing to "ask the court for more time or alert the court that it was having trouble finding counsel." Arguably, there was some neglect in GreenGro's failure to submit before the OSC hearing a declaration describing its difficulties in obtaining counsel and showing that more time reasonably was necessary. The court's notices of the OSC hearing informed GreenGro that if it opposed imposition of sanctions, it "must file a declaration four court days in advance of the

11

hearing, describing the evidence that supports any facts, which show that the court lacks good cause to impose sanctions." GreenGro did not comply with that instruction.[5]

We are not persuaded, however, that GreenGro's failure to submit a declaration is reasonably viewed as *inexcusable* neglect, if it was neglect at all given the circumstances described by Haas. Haas appeared telephonically at the hearing. He averred that he was advised by several attorneys (albeit not formally retained) that he could appear telephonically, "request . . . more time to secure an appearance by replacement counsel, and expect more time would be granted." Moreover, such advice has at least some basis in published appellate authority. In *Van Gundy v. Camelot Resorts, Inc.* (1983) 152 Cal.App.3d Supp. 29 (*Van Gundy*), the appellate division of the superior court acknowledged the general rule that "with the sole exception of small claims court, a corporation cannot act in propria persona." (*Id.* at p. 30.) Nevertheless, according to *Van Gundy*, even if no "licensed lawyer" is present, the trial court *may* "hear a motion for continuance" instead of entering the corporation's default.[6] (*Van Gundy* at p. 32; see *DeLisi v. Lam* (2019) 39 Cal.App.5th 663, 682 ["Published decisions of the superior court appellate division have precedential value"].) Viewed in that light, it was

---

[5] GreenGro suggests in its reply brief on appeal that it did not receive adequate notice of the declaration requirement, based on either purported ambiguity in the notices or a defect in the court's proof of service for the notice of the OSC regarding legal representation. In light of our reasoning here, however, we need not decide either the merits of these arguments or whether GreenGro forfeited them by failing to raise them earlier.

[6] We need not decide, for present purposes, whether *Van Gundy* is correct.

defensible for Haas to believe the court would hear a request from him to continue the OSC hearing and give him more time to find counsel, even in the absence of a declaration opposing sanctions. Indeed, by criticizing Haas for failing to inform the court GreenGro needed more time to find counsel, the trial court implied that it would have considered a continuance request by Haas, even though he generally could not appear for the corporation.

Furthermore, we agree with GreenGro that it should not be faulted for Haas's failure to interpose a request for a continuance at the OSC hearing. Haas was not expressly forbidden to make such a request, but he also was not given a meaningful opportunity to do so. At the beginning of the hearing, the trial court verified that Haas was present telephonically, asked him to state his name for the record, and then asked a question calling for only a yes or no answer: "Are you an attorney, sir, licensed to practice in the state of California?" After receiving Haas's answer ("I am not"), the trial court thanked him—a courtesy, perhaps, but also an indication that Haas should stop speaking—and then immediately announced its ruling striking GreenGro's pleadings. Again, if there was neglect in Haas's failure to nevertheless interpose a request for a continuance or explanation for the company's continued lack of legal representation, either before or after the trial court made its ruling, we see no basis to find it inexcusable.

Notably absent from the record is any indication that Browne would be prejudiced by setting aside GreenGro's default. The only "true prejudice" appears to be that Browne would "have to go back and try the case on the merits." (*Rogalski v. Nabers Cadillac*

13

(1992) 11 Cal.App.4th 816, 822 (*Rogalski*).) "But since the law strongly favors trial and disposition on the merits," that means that "there is no prejudice." (*Ibid.*) Browne has not attempted, either in the trial court or on appeal, to identify any other form of prejudice it would suffer if GreenGro were relieved from default, arguing only that GreenGro did not meet its burden of showing excusable neglect. As discussed above, we do not find that argument persuasive.

In sum, GreenGro presented evidence that it searched for new counsel with reasonable diligence, and moved promptly to set aside the default after retaining counsel. Its showing of excusable neglect, both as to its failure to meet the court's deadline for obtaining new counsel and its failure to respond to the OSC regarding legal representation in the manner ordered by the trial court, was adequate to justify relief. Particularly in light of the absence of any indication Browne would be prejudiced, the trial court's decision to nevertheless deny relief does not comport with the principle that "'any doubts in applying section 473 must be resolved in favor of the party seeking relief from default.'" (*Rappleyea, supra*, 8 Cal.4th at p. 980.) On that basis, we find the trial court abused its discretion.[7]

---

[7] In opposing GreenGro's motion in the trial court, Browne argued that, if relief from default was granted, Browne should be awarded about $4,000 as reasonable attorney fees and costs incurred in opposing the motion, as well as fees and costs incurred in relation to the OSC hearing and entry of default. (See § 473, subd. (b); *Jade K. v. Viguri* (1989) 210 Cal.App.3d 1459, 1474 ["Section 473 permits the court to grant relief 'upon such terms as may be just,'" including ordering "payment of costs or attorney fees to the adverse party as compensation for loss or expense occasioned by the granting of the section 473 motion"]; but see *Rogalski, supra*, 11 Cal.App.4th at p. 823 [limiting award to fees and costs "incurred in *obtaining* the defaults only," because defaulting

*[footnote continued on next page]*

14

DISPOSITION

The judgment is reversed, and the matter is remanded to the trial court with directions to vacate its order denying GreenGro's section 473, subdivision (b), motion and enter a new order granting the motion. The parties shall bear their own costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


RAPHAEL_____
J.

We concur:

RAMIREZ_____
P. J.

MENETREZ_____
J.

---

party "cannot be asked to bear the entire economic burden of prosecuting a motion which should have been granted and an appeal which is meritorious"].) We express no opinion as to whether such an award of fees and costs would be appropriate in this case, or what the magnitude of such an award, if any, should be. The trial court may consider these issues in the first instance on remand, if requested to do so.